**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE: CAPITAL ONE CREDIT CARD
INTEREST HIKE LITIGATION                    )
)
)
)         Case No. 1:10-md-2171-JOF
)

## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Kevin S. Barker, Eric W. Baxter, Michael A. Gaffney, Rebekah L. Kautz, Richard J. Lavallie, David E. Solsberry, Nancy Mancuso, Traci L. Roberti and Jennifer L. Kolkowski ("Plaintiffs") individually, and on behalf of all others similarly situated, for their Consolidated Amended Complaint against Capital One Bank (USA), N.A. ("COBNA" or "Capital One") allege, upon information and belief, except as stated herein as to the allegations which pertain to Plaintiffs and their counsel, which claims are based on personal knowledge, as follows:

## INTRODUCTION

1.      This is a civil action brought by Plaintiffs on behalf of themselves and all others similarly situated against COBNA arising out of Defendant's false, misleading and deceptive marketing materials that touted Capital One's "low" and/or "fixed" interest rates to consumers interested in applying for a Capital One credit card.

2.      After promising consumers "low" and/or "fixed" interest rates on purchases and balance transfers and providing them with a credit card, Capital One unilaterally, arbitrarily and greatly increased the annual percentage rates ("APRs") on Plaintiffs' and Class members' accounts, despite the accounts being in good standing.  As a result, the finance charges

associated with Plaintiffs' and Class members' accounts increased dramatically, often jumping more than 10%. Such increases violated the express terms of Defendant's credit card agreement based on Defendant's failure to notify customers. Moreover, such excessive increases – which were imposed pursuant to Defendant's self-granted discretion to change account terms – violated the card agreement as modified by the covenant of good faith and fair dealing.

3.      Moreover, Defendant's unilateral increase in interest rates came without the required notice and therefore violated the Truth in Lending Act (15 U.S.C. § 1601 *et seq.*) ("TILA"). Defendant's solicitation of Plaintiffs and the Class members was misleading and inadequate under TILA's disclosure requirements.

4.      Plaintiffs seek damages, statutory and exemplary damages, equitable and declaratory relief to remedy Defendant's common law and statutory violations. Plaintiffs also seek a finding and declaration under the Declaratory Judgment Act that Defendant's challenged practices are unlawful and/or inequitable.

## JURISDICTION

5.      This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331.

6.      Alternatively, Plaintiffs invoke the subject matter jurisdiction of this Court pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act as the aggregate claims of the putative Class members exceed $5,000,000 and diversity exists between Plaintiffs and Defendant.

7.      A further basis for subject matter jurisdiction of this Court exists pursuant to 28 U.S.C. § 2201. Further, on June 11, 2010, the Judicial Panel on Multidistrict Litigation

("JPML") transferred the original complaints of some Plaintiffs pursuant to 28 U.S.C. § 1407 to the Northern District of Georgia as the appropriate transferee forum for this litigation.

8.     This Court has supplemental jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367(a).

9.     This Court has personal jurisdiction over the Defendant as it conducts substantial business in the State of Georgia, and/or the conduct complained of occurred in or emanated from this District.  Venue is proper in this District because pursuant to 28 U.S.C. § 1391(b)(2) because COBNA conducts business in the District, is subject to personal jurisdiction in the District, and a substantial part of the events giving rise to the claims occurred in the District.  Plaintiffs transferred to this Court pursuant to 28 U.S.C. § 1407 retain their rights under *Lexecon Inc. v. Milberg Weiss Bershad Haynes & Lerach*, 523 U.S. 26 (1998), to return to the respective district from which they were transferred at the conclusion of pretrial proceedings in this Court.

## PARTIES

### Plaintiff Kevin S. Barker

10.     Plaintiff Lieutenant Commander Kevin S. Barker ("Plaintiff Barker") is an officer of the United States Navy and a resident of the State of Florida, where he has resided at all relevant times.  Plaintiff Barker has had an active credit card account with COBNA from November 28, 2003 to the present.  Prior to the period ending July 2, 2009, Plaintiff Barker's Capital One credit card account was subject to an APR of 7.9% for purchases.  Beginning the next billing cycle, Defendant unilaterally increased the APR on his Capital One credit card account to 17.9% for purchases.  At the time of the APR increase, Plaintiff Barker's Capital One credit card account was in good standing.

11.     As a result of Defendant's decision to increase the APR on Plaintiff Barker's account by 10 percentage points, the finance charges on his existing balance increased considerably.   Thus, Plaintiff Barker has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.   Since Plaintiff Barker's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.   Plaintiff Barker has been injured in a manner common and typical of other Class members.

### Plaintiff Baxter

12.     Plaintiff Eric W. Baxter ("Plaintiff Baxter") is a resident of the State of Florida and has resided there at all relevant times.   Plaintiff Baxter has had an active credit card account with COBNA from January 9, 2006 to the present.   Prior to the period ending April 17, 2009, Plaintiff Baxter's Capital One credit card account was subject to a variable APR of 4.53% to 5.98% for purchases.   Beginning the next billing cycle, Defendant unilaterally increased the APR on his Capital One credit card account to 15.9% for purchases.   At the time of the APR increase, Plaintiff Baxter's Capital One credit card account was in good standing.

13.     As a result of Defendant's decision to increase the APR on Plaintiff Baxter's account by approximately 10 percentage points, the finance charges on his existing balance increased considerably.    Thus, Plaintiff Baxter has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.   Since Plaintiff Baxter's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.   Plaintiff Baxter has been injured in a manner common and typical of other Class members.

4

**Plaintiff Michael A. Gaffney**

14.     Plaintiff Michael A. Gaffney ("Plaintiff Gaffney") is a resident of the Commonwealth of Massachusetts and has resided there at all relevant times.  Plaintiff Gaffney has had an active credit card account with COBNA from July 14, 1993 to the present.  Prior to the period ending July 2, 2009, Plaintiff Gaffney's Capital One credit card account was subject to a variable APR of 5.3% to 6.17% for cash advances.  Beginning the next billing cycle, Defendant unilaterally increased the APR on his Capital One credit card account to 24.9% for cash advances.  At the time of the APR increase, Plaintiff Gaffney's Capital One credit card account was in good standing.

15.     As a result of Defendant's decision to increase the APR on Plaintiff Gaffney's account by approximately 19 percentage points, the finance charges on his existing balance increased considerably.  Thus, Plaintiff Gaffney has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Gaffney's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Gaffney has been injured in a manner common and typical of other Class members.

**Plaintiff Rebekah L. Kautz**

16.     Plaintiff Rebekah L. Kautz ("Plaintiff Kautz") is a resident of the State of Kansas and has resided there at all relevant times.  Plaintiff Kautz has two active credit card account with COBNA, the first ("#2600") from May 3, 2003 and the second ("#8899") from July 30, 2003.  Prior to the period ending July 2, 2009, Plaintiff Kautz's Capital One credit card account #2600 was subject to an APR of 12.9% for purchases.  Beginning the next billing cycle,

Defendant unilaterally and without prior notice to Plaintiff Kautz (which notice is required by Plaintiff Kautz's contract and TILA), increased the APR on her Capital One credit card account #2600 to 22.9% for purchases.  At the time of the APR increase, Plaintiff Kautz's Capital One credit card account #2600 was in good standing.

17.     As a result of Defendant's decision to increase the APR on Plaintiff Kautz's #2600 account by approximately 10 percentage points, the finance charges on her existing balance increased considerably.  Thus, Plaintiff Kautz has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Kautz's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Kautz has been injured in a manner common and typical of other Class members.

18.     Prior to the period ending July 2, 2009, Plaintiff Kautz's Capital One credit card account #8899 was subject to an APR of 9.9% for purchases.  Beginning the next billing cycle, Defendant unilaterally and without prior notice to Plaintiff Kautz (which notice is required by Plaintiff Kautz's contract and TILA), increased the APR on her Capital One credit card account #8899 to 17.9% for purchases.  At the time of the APR increase, Plaintiff Kautz's Capital One credit card account #8899 was in good standing.

19.     As a result of Defendant's decision to increase the APR on Plaintiff Kautz's #8899 account by approximately eight percentage points, the finance charges on her existing balance increased considerably.  Thus, Plaintiff Kautz has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Kautz's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will

continue until abated or enjoined.  Plaintiff Kautz has been injured in a manner common and typical of other Class members.

### Plaintiff Richard J. Lavallie

20.     Plaintiff Richard J. Lavallie ("Plaintiff Lavallie") is a resident of the State of Georgia and has resided there at all relevant times.  Plaintiff Lavallie has had an active credit card account with COBNA from March 6, 1999 to the present.  Prior to the period ending July 2, 2009, Plaintiff Lavallie's Capital One credit card account was subject to a variable APR of 7.9% to 8.77% for purchases.  Beginning the next billing cycle, Defendant unilaterally and without prior notice to Plaintiff Lavallie (which notice is required by Plaintiff Lavallie's contract and TILA), increased the APR on his Capital One credit card account to 17.9% variable on purchases.  At the time of the APR increase, Plaintiff Lavallie's Capital One credit card account was in good standing.

21.     As a result of Defendant's decision to increase the APR on Plaintiff Lavallie's account by approximately 10 percentage points, the finance charges on his existing balance increased considerably.  Thus, Plaintiff Lavallie has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Lavallie's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Lavallie has been injured in a manner common and typical of other Class members.

### Plaintiff David E. Solsberry

22.     Plaintiff David E. Solsberry ("Plaintiff Solsberry") is a resident of the State of Georgia and has resided there at all relevant times.  Plaintiff Solsberry has had an active credit

card account with COBNA from October 18, 2004 to the present.  Prior to the period ending July 2, 2009, Plaintiff Solsberry's Capital One credit card account was subject to a fixed APR of 7.9% for purchases.  Beginning the next billing cycle, Defendant unilaterally increased the APR on his Capital One credit card account to 17.9% variable on purchases.  At the time of the APR increase, Plaintiff Solsberry's Capital One credit card account was in good standing.

23.     As a result of Defendant's decision to increase the APR on Plaintiff Solsberry's account by approximately ten percentage points, the finance charges on his existing balance increased considerably.   Thus, Plaintiff Solsberry has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Solsberry's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Solsberry has been injured in a manner common and typical of other Class members.

### Plaintiff Nancy Mancuso

24.     Plaintiff Nancy Mancuso ("Plaintiff Mancuso") is a resident of the State of New Jersey and has resided there at all relevant times.  Plaintiff Mancuso has three active credit card accounts with COBNA, the first ("#2336"), the second ("#5888") and the third ("#2324").   Prior to the period ending January 9, 2010, Plaintiff Mancuso's Capital One credit card account #2336 was subject to an APR of 4.99% for purchases.  Beginning the next billing cycle, Defendant unilaterally and without prior notice to Plaintiff Mancuso (which notice is required by Plaintiff Mancuso's contract and TILA), increased the APR on her Capital One credit card account #2336 to 13.9% for purchases.  At the time of the APR increase, Plaintiff Mancuso's Capital One credit card account #2336 was in good standing.

25.     As a result of Defendant's decision to increase the APR on Plaintiff Mancuso's #2336 account by approximately nine percentage points, the finance charges on her existing balance increased considerably.   Thus, Plaintiff Mancuso has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Mancuso's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Mancuso has been injured in a manner common and typical of other Class members.

26.     Prior to the period ending January 5, 2010, Plaintiff Mancuso's Capital One credit card account #5888 was subject to an APR of 4.99% for purchases.  Beginning the next billing cycle, Defendant unilaterally and without prior notice to Plaintiff Mancuso (which notice is required by Plaintiff Mancuso's contract and TILA), increased the APR on her Capital One credit card account #5888 to 13.9% for purchases.  At the time of the APR increase, Plaintiff Mancuso's Capital One credit card account #5888 was in good standing.

27.     As a result of Defendant's decision to increase the APR on Plaintiff Mancuso's #5888 account by approximately nine percentage points, the finance charges on her existing balance increased considerably.   Thus, Plaintiff Mancuso has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Mancuso's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Mancuso has been injured in a manner common and typical of other Class members.

28.     Prior to the period ending January 21, 2010, Plaintiff Mancuso's Capital One credit card account #2324 was subject to an APR of 4.99% for purchases.  Beginning the next

billing cycle, Defendant unilaterally and without prior to Plaintiff Mancuso (which notice is required by Plaintiff Mancuso's contract and TILA), increased the APR on her Capital One credit card account #2324 to 13.9% for purchases.  At the time of the APR increase, Plaintiff Mancuso's Capital One credit card account #2324 was in good standing.

29.     As a result of Defendant's decision to increase the APR on Plaintiff Mancuso's #2324 account by approximately nine percentage points, the finance charges on her existing balance increased considerably.   Thus, Plaintiff Mancuso has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Mancuso's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Mancuso has been injured in a manner common and typical of other Class members.

### Plaintiff Traci L. Roberti

30.     Plaintiff Traci L. Roberti ("Plaintiff Roberti") is a resident of the State of Alabama and has resided there at all relevant times.  Plaintiff Roberti is the holder of a Capital One credit card account.  Prior to the period ending January 20, 2010, Plaintiff Roberti's Capital One credit card account was subject to an APR of 8.4% for purchases.  Beginning the next billing cycle, Defendant unilaterally and without prior notice to Plaintiff Roberti (which notice is required by Plaintiff Roberti's contract and TILA), increased the APR on her Capital One credit card account to 17.9% for purchases.  At the time of the APR increase, Plaintiff Roberti's Capital One Platinum Master Card account was in good standing.

31.     As a result of Defendant's decision to increase the APR on her account by approximately nine and one half percentage points, the finance charges associated with her

existing balance increased considerably.  Thus, Plaintiff Roberti has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Roberti's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Roberti has been injured in a manner common and typical of other Class members.

### Plaintiff Jennifer L. Kolkowski

32.     Plaintiff Jennifer L. Kolkowski ("Plaintiff Kolkowski") is a resident of the State of California and has resided there at all relevant times.  Plaintiff Kolkowski is the holder of a Capital One credit card account.  Prior to the period ending April 25, 2009, Plaintiff Kolkowski's Capital One credit card account was subject to an APR of 4.62% for purchases.  Beginning the next billing cycle, Defendant unilaterally and without prior notice to Plaintiff Kolkowski (which notice is required by Plaintiff Kolkowski's contract and TILA), increased the APR on her Capital One credit card account to 15.9% for purchases.  At the time of the APR increase, Plaintiff Kolkowski's Capital One credit card account was in good standing.

33.     As a result of Defendant's decision to increase the APR on her account by approximately 11 percentage points, the finance charges associated with her existing balances increased considerably.  Thus, Plaintiff Kolkowski has been injured, harmed and has suffered ascertainable damages as a result of Defendant's conduct.  Since Plaintiff Kolkowski's Capital One account is still active, the injuries caused by Defendant's unlawful acts and practices will continue until abated or enjoined.  Plaintiff Kolkowski has been injured in a manner common and typical of other Class members.

**Defendant**

34.     COBNA is a federal bank headquartered at 11011 West Broad Street, Glen Allen, Virginia.   As of February 2008, the Office of the Comptroller of Currency has designated COBNA a limited purposed bank under 12 C.F.R. §25.25.   COBNA's principal business comprises issuing, marketing and servicing credit and debit cards and the attendant consumer loans.  COBNA is and has always been a wholly-owned and controlled subsidiary of Capital One Financial.   Many of the officers and directors of Capital One Financial are simultaneously officers and directors of COBNA.

35.     Defendant is one of the largest issuers of credit cards in the nation.  As of the end of 2008, Defendant was the fourth largest issuer of Visa® and MasterCard® credit cards in the United States, reflecting $17 billion of American consumer debt.

**SUBSTANTIVE ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**
**Defendant's False and Deceptive Advertising Practices**

36.     Defendant has aggressively marketed its credit card products to customers throughout the country by promising customers "low" and/or "fixed" interest rates.  Defendant used express language, touting the "low" and/or "fixed" interest rates on its cards.  In no way do Defendant's advertisements warn consumers that it retains the right to unilaterally increase the APR at any time, for any reason.   Thus, consumers, including Plaintiffs, were left with the impression that Defendant's credit card interest rates would remain low and/or fixed.

37.     Defendant's marketing is pervasive – television, radio, mailing, internet mailing, etc.  And all marketing gives the impression that Capital One products, unlike the products of its competitors, offer "low" and/or "fixed" rates.

38.     Defendant has employed false, deceptive and misleading television advertisements to market its credit cards as those with interest rates that will remain "low" and/or "fixed."  For example, Defendant ran a series of television advertisements for its "Card Lab" credit cards entitled "Meteor," "Galactic Empire," "Armadillo Man," "Sea Captain," "Mega Villain" and "Mad Scientist" all of which advertise that customers can select its own low interest rates.  Each of these commercials indicates that consumers can choose a "low interest" rate and other beneficial terms.   These television advertisements all give the false impression to consumers that, unlike competitor's credit cards, Defendant's credit cards allow you to select a low interest rate and that the interest rate will not change.[1]

39.     Defendant's false and misleading marketing practices are not limited solely to television advertisements.  Defendant's written promotional materials also prominently represent that the credit cards' rate is "low" and "fixed" multiple times in each solicitation.  Further, these terms "low" and "fixed" are often set apart from the rest of the solicitation through the use of different type styles, sizes and faces.  Like the television advertisements, Defendant's written promotional materials contain no language contradicting or otherwise qualifying its false and misleading representations.

---

[1] These television advertisements can be found at the following internet locations:  "**Meteor**": http://adland.tv/commercials/capital-one-meteor-2008-30-usa; "**Galactic Empire**": http://www.youtube.com/watch?v=yosTIwbFjzM; "**Armadillo Man**": http://adland.tv/commercials/capital-one-armadillo-2008-30-usa; "**Sea Captain**": http://adland.tv/commercials/capital-one-giant-squid-2008-30-usa; "**Mega Villain**": http://adland.tv/commercials/capital-one-card-lab-mega-villain-2008-30-usa; "**Mad Scientist**": http://adland.tv/commercials/capital-one-card-lab-mad-scientist-2008-30-usa.

40.     Defendant's marketing schemes are ubiquitous and always advertise "low" and/or "fixed" interest rates.   In fact, Defendant's marketing practices have been the subject of investigations by various state attorneys general.

**The Minnesota Attorney General Action**

41.     The Attorney General for the State of Minnesota filed suit against Capital One for failing to disclose that the terms of its advertised "fixed rate" and "low rate" credit cards could unilaterally be changed by Defendant at any time.

42.     The Minnesota Attorney General's Complaint alleged that Defendant ran numerous television advertisements that created "the false impression among consumers that, unlike competitors' credit cards, Capital One's credit cards have interest rates that will not increase."   The Complaint alleged examples of this misleading advertising as indicating that the advertised credit card's interest rates were "low" and "fixed" and used the same basic format, script, graphics and visual punch line to create a false impression among consumers that Capital One credit cards have interest rates that would not increase.

43.     As the Minnesota Action alleged in connection with the television advertisement initiatives:

> Capital One employs false, deceptive, and misleading television advertisements to market to [consumers] a brand image that, unlike its competitors, it is as an issuer of credit cards with interest rates that remain "low" and "fixed." In fact, Capital One increases the interest rates charged to the substantial number of cardholders who default ("penalty rate repricing"), and retains the right to increase interest rates for no reason at all pursuant to a "change-in-terms" provision in the credit card contract ("change-in-terms repricing") . . . .

> Capital One regularly runs television advertisements . . . to promote its brand identity among both prime and subprime consumers as the credit card issuer with "low and fixed" interest rates.  "Prime" consumers are those whom Capital One deems to be a lower credit risk due to the consumers' higher credit ratings, while

14

"subprime" or "underserved" consumers are those whom Capital One deems to be a higher credit risk based on their lower credit ratings due to a lack of credit history, past credit problems, or other reasons.

For instance, Capital One ran a series of three television advertisements for its "No-Hassle" credit card entitled "Catapult," "Whale" and "Toys," all of which advertised the card's interest rate as "low" and "fixed," and some of which advertised a specific "fixed" rate of "4.99%." This trilogy of television advertisements used the same basic format, script, graphics and visual punch line to create the false impression among consumers that, unlike competitors' credit cards, Capital One's credit cards have interest rates that will not increase.

**Catapult**: "Catapult" is set in a sidewalk café in a business district. As two men finish dining, the first man takes out a competitor's credit card and offers to pay for the meal because he's "getting a really low rate" on his credit card. Taking out his Capital One card, the second man tells the first, "I hope it's a low fixed rate like my Capital One No-Hassle card." Puzzled, the first man asks, "low and fixed?" Visibly nervous, the first man then asks, "What's going to happen to my rate?" As he finishes his question, Vikings representing Capital One's rapacious competitors storm the café, position the arm of a catapult under his chair, and propel him high into the air, while the second man looks on in horror--a graphic illustration of competitors' rising interest rates. A voiceover represents to consumers, "Get the Capital One No Hassle card for the nation's lowest fixed rates . . . .," while the top two-thirds of the screen is consumed with prominent representations, such as:

Capital One
Nation's Lowest Fixed Rate
4.99% APR
By Mail Offer Only

**Whale**: "Whale" is set at a resort swimming pool, where the large black dorsal fin of a killer whale glides unnoticed among the swimmers. Two men and a woman have just finished a meal at a poolside restaurant. Taking out a competitor's credit card, the man in the middle offers to pay for lunch because he is "getting a really low rate on [his] credit card." Holding up her Capital One card, the woman tells him she hopes his rate is "low and fixed…like my Capital One No-Hassle card." Puzzled, the man replies, "low and fixed? Well, what's going to happen o my rate?" As the man finishes his question, he is suddenly thrust high into the sky on the nose of the killer whale which has jumped out of the water directly beneath him. A voiceover represents to consumers, "Get the Capital One No Hassle card with the nation's lowest fixed rates," while water splashes over the side of the pool revealing thereon a prominent representation: "Nation's Lowest Fixed Rates."

15

**Toys:** "Toys" is set in a child's playroom being vacuumed by a woman in the background. An animated male toy, "Racer," enters the playroom in new boots. An animated female toy compliments Racer on his new boots. Racer tells her that he bought them with a competitor's credit card, which he proudly displays, and he boasts about its "amazing low rate." Producing a Capital One card, the female toy asks Racer if his card's interest rate will "stay low like my Capital One No Hassle card?" Worried, Racer asks, "What is going to happen to my rate?," after which he is immediately sucked up into the woman's vacuum cleaner. A voiceover represents to consumers, "Get the Capital One No Hassle card with a rate that starts low and stays low," while the top three-fourths of the screen is consumed with a prominent representation above Capital One's "No Hassle" logo:

Capital One
Starts Low
Stays Low

Capital One purports to qualify the overwhelming net impression of its television advertisements that the rates on its credit cards remain "low" and "fixed" by placing momentary disclaimers on the television screen at the end of each advertisement, including phrases such as "terms subject to change without notice;" "additional terms and conditions apply, see your mailed invitation for more details;" or sometimes "this offer assumes the account will be kept in good standing." Capital One's qualifications are not only unreadable in that they appear for four to six seconds at the bottom of the television screen in a paragraph of blurry fine print, but their substance does not meaningfully alert consumers to the use of penalty-rate or change-in-terms repricing.

Minnesota Complaint, ¶¶ 8-11. These allegations are also made by Plaintiffs herein.

44.     In addition, the Minnesota Action alleged that Capital One's written promotional material touted that the fixed rates offered to consumers were not introductory rates and that while interest rates in general would likely go up, the rate on the offered credit card would not. Plaintiffs make these allegations here as well.

45.     Moreover, Plaintiffs incorporate other allegations from the Minnesota Action as are relevant in this litigation regarding Defendant's written solicitations:

Often including the same or similar slogans and logos as those used its television spots, Capital One's written solicitations further create the false, deceptive and

16

misleading impression among Minnesota consumers that, unlike competitors' credit cards, Capital One's credit cards have interest rates on balance transfers and/or purchases that remain "low" and "fixed" as follows:

(a) Capital One repeatedly and prominently represents in each solicitation that its rate is "low" and "fixed," often more than a dozen times in each solicitation.

(b) Capital One graphically emphasizes its "low" and "fixed" rate by setting those terms apart in different type styles, faces and sizes, as well as in logos (e.g., "Capital One No Hassle Platinum Card" logo); icons (e.g., a bold-and-block-lettered "4.99% FIXED APR" atop an Ionic capital); and tabular boxes that compare Capital One's credit card rates and "savings" to those of competitors.

(c) Capital One states or implies that its rates will never increase by representing that interest rates "are likely to go up soon," but "the rate on this card won't;" that consumers will enjoy the benefits of the "fixed" rate "in the future," "year after year," or "for life;" that consumers will "transfer balances for the last time" to the "fixed-rate" card; and other such representations.

*** 

Capital One's written marketing pieces contains no language contradicting or otherwise qualifying its false, fraudulent and deceptive representations that its interest rates remain "low" and "fixed," with the exception of a subset of fixed-rate solicitations that promote a particular "fixed" rate on balance transfers "for life" or "for the life of the balance."

Minnesota Complaint, ¶¶ 26, 28.

46.     Defendant failed to disclose in its marketing materials that it maintains the unilateral right to increase interest rates, thereby failing to alert consumers of the actual terms of the card.  Thus, Plaintiffs and Class members, enticed by representations of "low" and/or "fixed" interest rates applied for cards, received cards with a "low" and/or "fixed" interest rate only to have that interest rate increased by Defendant without reason.

### Defendant's Unilateral Interest Rate Increases

47.     Defendant unilaterally change cardholders' "low" and/or "fixed" interest rates without reason through the practice of "change-in-terms repricing."

17

48.     Despite the solicitations offering a "low" and/or "fixed" product, which Plaintiffs and the Class accept, Defendant delivered a product for which it reserved to itself broad authority to change terms in its "Customer Agreement," which states as follows:

> **Change In Terms.** We may add to, remove, amend or change any part or provision of this Agreement, including the annual percentage rate(s) and any charges, (including adding new provisions of the same or a different nature as the existing provisions in this Agreement) at any time.  If we do so, we will give you notice of such amendment or change if required by Federal law or Virginia law (to the extent not preempted by Federal law) unless we had previously notified the customer that the account would be subject to such amendment or change without notice.  Notice will be mailed to the last billing address indicated in our records for the account.  However, no notice will be mailed if we previously had notified you that your account would be subject to such amendment or change without notice.  Changes to the annual percentage rate(s) will apply to your existing balance from the effective date of the change, whether or not the account balance includes transactions billed to the account before the change date and whether or not you continue to use the account.  Changes to fees and other charges will apply to your account from the effective date of the change.

49.     Under this change-in-terms provision, Defendant purportedly may not only unilaterally increase a cardholder's interest rate, but may then apply that higher interest rate to the cardholder's entire balance at the time of the increase, whether or not that balance includes charges incurred before the rate increase.  Thus, it is alleged that Defendant does not necessarily intend to to abide by its offer to keep the cards at "low" and/or "fixed" rates.

50.     Professor Elizabeth Warren, the Leo Gottlieb Professor of Law at Harvard Law School and Chair of the congressional panel overseeing the Troubled Asset Relief Program ("TARP"), wrote an editorial column for the Washington Post, published on Sunday, May 9, 2010, discussing the issue of "fine print" in credit card agreements.  The editorial, in relevant part stated:

> Over the past generation, the proliferation of fine print, in everything from car loans to credit card applications to television commercials has shaken what we

18

value about contracts.  Fine print means that one party (think: a big corporation) can lay down the terms of the deal in a way that the other party (think: a customer) is unlikely to figure out.  Long after the contract has been signed, the party that inserted all the fine print can do almost anything – raise prices, cut service, extend the contract – all because the fine print says so.

Remember that our current financial crisis began one lousy mortgage at a time – one lousy, incomprehensible, complex mortgage loaded with trip-wires and legalese at a time.  Many borrowers knew they were engaging in a high-risk game, but millions of others were unaware of what they had agreed to until the foreclosure notices started coming.

Fine print costs everyone else money, too, because it makes products impossible to compare.  (Just look at four credit card agreements and try to identify the cheapest one.)  By decreasing competition, fine print increases prices.

My proposal is simple: no more fine print . . . .

51.     The Customer Agreement and the change-in-terms provision are not disclosed to consumers *prior to* their acquisition of Defendant's credit cards.  Thus, much like "bait and switch" programs, consumers are offered one product (low and/or fixed rate credit cards) but receive another (credit cards with "change-in-term" provisions providing for unilateral APR increases).

52.     In fact, Defendant has admitted that "[a]fter a Capital One customer submits an application for a Capital One credit card, and Capital One determines to accept that application, Capital One mails the new customer a credit card and **<u>separately mails</u>** the customer a copy of the Customer Agreement then in effect. "  <u>See</u> Declaration of Aniruddha S. Nagaraj, ¶ 9 (Exhibit A to Capital One's Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. No. 16 in Case No. 1:09-cv-02692-JOF)).

53.     Upon receipt of their new credit card, consumers must sign the back of the card that states: "By accepting, signing or using this card, you agree to Capital One's present and

future rules and regulations." <u>Id.</u> at ¶ 10.  Consumers may not have received the copy of the Customer Agreement then in effect and are being asked to blindly agree to terms in order to use their new credit card.

54.   Consumers are injured by this "bait and switch" even if they chose not to use the credit card.  Believing they are receiving one product (low and/or fixed credit cards), they apply for the card and receive it.  Just this action of applying for the credit card impacts that consumer's credit.  By the time the consumer is approved for the credit card, the consumer's credit report has registered the inquiry and factored in the new credit.  This new credit impacts a consumer's credit score and the inquiry by the credit card company into the consumer's credit history impacts the consumer's credit.  Even if the consumer were to simply dispose of the card after reviewing the Customer Agreement and realizing that what they were offered – a "low" and/or "fixed" rate credit card – is not what they received, the customer's credit has already been impacted.  Thus, simply disposing of the credit card does not negate the impact of obtaining the card in the first instance.  Even if the consumer chooses to close their account due to the "bait and switch," their credit has still been affected because closing an open credit account can tarnish one's credit.

55.   The  harm  to  a  consumer's  credit  score  is  further  explained  by www.wikipedia.org, an online encyclopedia, which states the following:

> [T]he credit rating formula looks at the difference between the amount of credit a person has and the amount being used, so closing one or more accounts will reduce your total available credit.  <u>And the lower the percentage of credit, the more the credit score will drop</u>.  The credit formula also factors in the length of time credit accounts have been open, <u>so closing an account with several years of history is another avoidable credit mistake</u>.

(emphasis added).

56.     Defendant created an impression that it was offering a credit card with "low" and/or "fixed" interest rates that would not increase.  In truth, there is no "low" and/or "fixed" rate on Capital One credit cards: Defendant has imposed huge increases to interest rates on a substantial number of cardholders without any reason.

57.     Defendant's marketing materials, as described above, are simply false.  These ads also mislead consumers, have the tendency and capacity to deceive consumers, or the likelihood to create consumer confusion or misunderstanding as to the interest rate on the credit card.

58.     Consumers, including Plaintiffs, reasonably relied on Capital One to ensure that their credit card accounts are maintained and operated in a good faith manner.

59.     Capital One's recent arbitrary decision to increase APRs on existing accounts even when customers have accounts that are in good standing demonstrates that Defendant has failed to act in good faith when maintaining and operating Plaintiffs' credit card accounts.

**Plaintiffs Did Not Receive Notice of the Unilateral Interest Rate Hikes**

60.     Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti and Plaintiff Kolkowski did not receive notice of the unilateral interest rate hikes on their respective Capital One credit card accounts.

61.     In May 2009, the Credit Card Accountability Responsibility and Disclosure Act of 2009 ("Credit Card Act of 2009") went into effect.  That statute provides for substantial additional protections for credit card consumers, and creates substantial additional restrictions and disclosure requirements on credit card issuers.  The Credit Card Act of 2009 expands the disclosure requirements and prohibitions detailed in previously promulgated federal regulations.

62.     The Credit Card Act of 2009 provides the following:

- restrictions on increases in the rates charge on pre-existing credit card balances;

- a 45-day notice before any increase of an interest rate or any other significant change to credit card account terms; and

- the requirement that issuers consider decreasing interest rates increased since January 1, 2009 on a rolling six-month basis.

63.     The majority of provisions of the Credit Card Act of 2009 became effective in February 2010, but the 45-day written notice requirement has been in effect since August 20, 2009.

64.     To avoid the impact of these new laws, Defendant and other credit card issuers unilaterally increased card members' interest rates just prior to the effective dates.

65.     Despite the fact that the 45-day notice mandate was in effect prior to the rate increases plaguing Plaintiffs and many of the other Class members, and as described in more detail in paragraphs 10-33 above, Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski and other Class members did not receive notice of the interest rate increase.

## CLASS ACTION ALLEGATIONS

66.     All Plaintiffs bring this action on behalf of themselves and on behalf of the following national class pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "National APR Class"):

> All Capital One credit card account holders who incurred substantial (exceeding five percentage points) increases to the annual percentage rates associated with their credit card accounts despite their accounts being in good standing.

22

67.     Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti and Plaintiff Kolkowski bring this action on behalf of themselves and on behalf of the following national class pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "National Notice Class"):

> All Capital One credit card account holders who incurred substantial (exceeding five percentage points) increases to the annual percentage rates associated with their credit card accounts despite their accounts being in good standing and who did not receive written notice as required by the Customer Agreement or applicable federal law.

68.     The National APR Class and the National Notice Class are referred to collectively as the "National Classes."

69.     Plaintiffs also bring this suit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of state sub-classes in California, Kansas and New Jersey (the "State Sub-Classes").

70.     The California Sub-Class is initially defined as follows:

> All Capital One credit card account holders who are residents of California and who incurred substantial (exceeding five percentage points) increases to the annual percentage rates associated with their credit card accounts despite their accounts being in good standing.

71.     The Kansas Sub-Class is initially defined as follows:

> All Capital One credit card account holders who are residents of Kansas and who incurred substantial (exceeding five percentage points) increases to the annual percentage rates associated with their credit card accounts despite their accounts being in good standing.

72.     The New Jersey Sub-Class is initially defined as follows:

> All Capital One credit card account holders who are residents of New Jersey and who incurred substantial (exceeding five percentage points) increases to the annual percentage rates associated with their credit card accounts despite their accounts being in good standing.

73.     Excluded from the National Classes and State Sub-Classes are Defendant, its parents, subsidiaries, officers, directors, employees, partners and co-venturers

74.     The members of the National Classes are so numerous that joinder of all members by name in one action is impracticable.  The precise number of National Class members and their addresses are unknown to Plaintiff at this time, but can be ascertained from Defendant's records and will exceed 11 million card accounts.  See Capital One's Interrogatory Responses (Exh. A to Dkt. No. 21 in Case No. 1:09-cv-02692-JOF).  All injuries sustained by any member of the National Classes arise out of the conduct of Defendant.

75.     The members of each of the State Sub-Classes are so numerous that joinder of all members by name in one action is impracticable.  The precise number of State Sub-Class members and their addresses are unknown to Plaintiff at this time, but can be ascertained from Defendant's records.  All injuries sustained by any member of the State Sub-Classes arise out of the conduct of Defendant.

76.     Common questions of law and fact exist as to all members of the National Class. These questions predominate over the questions affecting only individual Class members.  The common legal and factual questions include, without limitation:

      a.     Whether Defendant represented that consumers had the ability to lock in "low" and/or "fixed" interest rates, and that their credit cards would bear "low" and/or "fixed" interest rates;

      b.     Whether Defendant unilaterally increased APRs from the "low" and/or "fixed" interest rates promised members of the Classes;

      c.     Whether the card member agreement and applicable law allowed

Defendant to increase the interest rates applicable to the credit cards of Class members;

d.      Whether Defendant misrepresented the benefits, uses, attributes and characteristics of its credit cards;

e.      Whether a reasonable consumer would likely have been deceived by Defendant's representations;

f.      Whether Defendant falsely advertised its credit cards;

g.      Whether Defendant, alternatively, was unjustly enriched by the conduct complained of herein; and

h.      The nature of the relief, including equitable relief, to which Plaintiffs and the members of the Classes are entitled.

77.     Common questions of law and fact exist as to all members of the respective State Sub-Classes.  These questions predominate over the questions affecting only individual Class members.  The common legal and factual questions include, without limitation:

a.      Whether Defendant represented that consumers had the ability to lock in "low" and/or "fixed" interest rates, and that their credit cards would bear "low" and/or "fixed" interest rates;

b.      Whether Defendant unilaterally increased APRs from the "low" and/or "fixed" interest rates promised members of the Sub-Classes;

c.      Whether the card member agreement and applicable law allowed Defendant to increase the interest rates applicable to the credit cards of Sub-Class members;

d.      Whether Defendant misrepresented the benefits, uses, attributes and characteristics of their credit cards;

e.      Whether a reasonable consumer would likely have been deceived by Defendant's representations;

f.      Whether Defendant falsely advertised its credit cards;

g.      Whether Defendant, alternatively, was unjustly enriched by the conduct complained of herein; and

h.      The nature of the relief, including equitable relief, to which Plaintiffs and the members of the State Sub-Classed are entitled.

78.     Plaintiffs' claims are typical of the claims of the National Classes because Plaintiffs, like all other Class members, had the interest rates applicable to their credit cards unilaterally increased by Defendant.

79.     Plaintiffs' claims are typical of the claims of the State Sub-Classes because Plaintiffs, like all other State Sub-Class members, had the interest rates applicable to their credit cards unilaterally increased by Defendant.  Plaintiffs are adequate representatives of the National Classes and the State Sub-Classes because their interests do not conflict with the interests of the members of the National Classes or the State Sub-Classes and they have retained counsel competent and experienced in complex class action and consumer litigation.

80.     The interests of the members of the National Classes and members of the State Sub-Classes will be fairly and adequately protected by Plaintiffs and their counsel.

81.     A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and members of the National Classes and members of the

State Sub-Classes.  The damages suffered by each member of all the Classes, while significant, are comparatively small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  Further, it would be virtually impossible for members of all the Classes, individually, to redress effectively the wrong done to them.  And, even if members of all the Classes could afford such individual litigation, the court system would be overwhelmed given the many thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments.  Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale and comprehensive supervision by a single court.

## COUNT I

**BREACH OF CONTRACT**
**(On behalf of the National APR Class)**

82.     Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

83.     Plaintiffs and members of the National APR Class entered into express contracts with Defendant setting forth the terms and conditions of their credit card accounts.

84.     Under the applicable state laws, the covenant of good faith and fair dealing is implied in every contract.  Good faith in contracting is the obligation to preserve the spirit of the bargain rather than merely the letter, the adherence to substance rather than form.  Evasion of the spirit of the bargain and abuse of a power to specify terms have been judicially recognized as examples of bad faith in the performance of contracts.

85.     A party who has sole discretion according to the express terms of the contract may not exercise that discretion in bad faith.   Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied.   Defendant has purported to reserve for itself a unilateral ability to choose whether to increase customers' APRs.   Because Defendant set the annual percentage rates unilaterally, it has an obligation to make changes to the APRs that apply to a consumer's account in good faith.   Defendant has breached this obligation by unilaterally imposing substantial increases in annual percentage rates upon consumers without reason.

86.     In breach of its duties of good faith and fair dealing, Defendant has assessed excessive, unreasonable and unnecessary interest on Plaintiffs and members of the National APR Class.

87.     Plaintiffs seek a judicial declaration determining that the charges imposed by Defendant are not consistent with Defendant's duties of good faith and fair dealing.   Plaintiffs also seek compensatory damages resulting from Defendant's breach of its duties of good faith and fair dealing.   Plaintiffs also seek a judicial determination that Defendant's interpretation of the contract is void as unconscionable under applicable state laws.

88.     By reason of Defendant's breaches of the covenant of good faith and fair dealing, Plaintiffs and the National APR Class suffered financial injuries and damages, which will continue until Defendant's unlawful conduct is enjoined or abated.

## COUNT II

### BREACH OF CONTRACT
### (On behalf of the National Notice Class)

89.     Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

90.     Defendant's conduct has also breached the plain terms of its credit card agreements with Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski and members of the National Notice Class.  Based upon such breach, Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti and Plaintiff Kolkowski also seek compensatory damages.

91.     The "Changes in Terms" provision in Defendant's standard "Customer Agreement" as detailed in paragraph 48 above requires that Defendant give notice of any changes to APRs.  The terms and conditions of Defendant's contracts with Plaintiffs and all Class members, along with Plaintiffs' and Class members' contractual rights deriving from those contracts, are dictated and supplemented, in part by TILA and Federal Regulations Z and AA.

92.     Defendant breached its contracts with Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski Plaintiffs and members of the National Notice Class by increasing these Plaintiffs' and Class members' APRs without prior, written notice that complied with Defendant's Customer Agreements, TILA, the Credit Card Act of 2009 and Regulations Z and/or AA.

93.     By reason of Defendant's breaches of the credit card agreements of Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski and members of the National Notice Class, these Plaintiffs and members of the National Notice Class suffered financial injuries and damages, which will continue until Defendant's unlawful conduct is enjoined or abated.

## COUNT III

### BREACH OF IMPLIED CONTRACT
### (On behalf of the National APR Class)

94.     Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

95.     Defendant's marketing materials advertising a "low" and/or "fixed" rate implied a promise to Plaintiffs and members of the National APR Class that Defendant would keep rates "low" and/or "fixed" in accordance with principles of good faith and reasonableness.

96.     In response to Defendant's marketing materials, Plaintiffs and members of the National APR Class accepted the promise and acquired a Capital One credit card with the expectation and understanding that the interest rate on said card would remain "low" and/or "fixed."

97.     Defendant breached this implied contract by unilaterally raising the interest rates on the credit cards of Plaintiffs and members of the National APR Class.

98.     As a direct and proximate result of Defendant's breach of this implied contract, Plaintiffs and members of the National APR Class have been injured and suffered damages.

## COUNT IV

### UNCONSCIONABILITY
### (On behalf of the National APR Class)

99.     Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

100.     Considering the great business acumen and experience of Defendant when compared to Plaintiffs and those similarly situated, the great disparity in its relative bargaining power, the inconspicuousness and incomprehensibility of the contract language, the oppressiveness of the terms, and the absence of a meaningful choice, the commercial

30

unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, the "Change-In-Terms" provisions are unconscionable and therefore unenforceable as a matter of law.

101.    Here, Plaintiffs and those similarly situated are consumers, not bankers. Defendant does not negotiate these terms with any customers.  Plaintiffs, like most consumers, were not in a position to bargain for more favorable contract terms, nor were they able to experience the results of Capital One's practices before enrolling in Capital One's services. With regard to the "surprise factor," Plaintiffs and those similarly situated were not made aware of Defendant's practices at the time the contract was entered into.

102.    Plaintiffs request an inquiry into the setting, purpose, and effect of these terms, including the basis and justification for the unilateral increases in annual percentage rates.  The credit card industry should not be immune from scrutiny.  Combined with the absence of meaningful choice, the lack of sophistication of consumers, and Capital One's questionable marketing, the Court should strike down Capital One's practices as unconscionable.

103.    Capital One has structured totally one-sided transactions.  The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks and balances which would inhibit the unilateral changing of interest rates.

104.    The conduct has injured Plaintiffs and members of the National APR Class and has resulted in damages.  Each rate increase imposed by Capital One should be rescinded and Plaintiffs and those similarly situated be refunded the excess interest paid to Defendant.

## COUNT V

### UNJUST ENRICHMENT
### (On behalf of the National APR Class)

105.    Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein. This count is pled in the alternative to Counts I, II and III.

106.    By means of Defendant's improper conduct as alleged herein, Defendant knowingly imposed interest rate and required payment increases on Plaintiffs and members of the National APR Class that are unfair, unconscionable and oppressive.

107.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National APR Class.  In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the National APR Class.

108.    As a result of Defendant's unlawful conduct as alleged herein, it has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National APR Class.

109.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

110.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of improper interest rate increases on Plaintiffs and members of the National APR Class in an unfair, unconscionable and oppressive manner.  Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

111.    The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the National APR Class.  Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the National APR Class all unlawful or inequitable proceeds received by them.   A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendant traceable to Plaintiffs and the members of the National APR Class.

112.    Defendant should further be enjoined from continuing to engage in any unlawful or inequitable act alleged in this Complaint.

## COUNT VI

### VIOLATIONS OF TILA - Notice
### (On behalf of the National Notice Class)

113.    Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

114.    Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski and members of the National Notice Class are "person[s]" as that term is defined in 15 U.S.C. § 1602(d) and "consumer[s]" as that term is defined in 15 U.S.C. § 1602(h).

115.    Defendant is a "creditors" as that term is defined in 15 U.S.C. § 1602(f).

116.    The credit card loans made by Defendant to consumers are required to adhere in all applicable respects to TILA and Regulation Z.

117.    After August 20, 2009, pursuant to TILA amendments enacted as part of the Credit Card Act of 2009, 15 U.S.C. § 1637 mandates 45-days notice prior to increasing a consumer's credit card interest rates.

118.   Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski and members of the National Notice Class did not receive the notice required by TILA.

119.   Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti, Plaintiff Kolkowski and members of the National Notice Class have been injured as a result of Defendant's violations of TILA and Regulation Z, which injuries will continue until Defendant's unlawful conduct is enjoined or abated.

120.   Plaintiff Kautz, Plaintiff Lavallie, Plaintiff Mancuso, Plaintiff Roberti and Plaintiff Kolkowski are entitled to pursue an action and a class action against Defendant pursuant to 15 U.S.C. § 1640 to redress Defendant's violations of TILA and Regulation Z.

## COUNT VII

### VIOLATIONS OF TILA – Misleading and Inadequate Disclosures
### (On behalf of the National Classes)

121.   Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein

122.   In light of the unilateral interest rate hikes on the credit card accounts of Plaintiffs and members of the Classes, Defendant's disclosures in its solicitations of a "low" and/or "fixed" rate were misleading and inadequate under the disclosure requirements of TILA.

123.   Plaintiffs, on behalf of themselves and the members of the National Classes they seek to represent, seek all remedies and relief pursuant to the provisions of TILA, including, inter alia, injunctive relief, statutory damages, actual damages, restitution, and the disgorgement of money acquire by means of the misleading business practices alleged above.

124.   As a result of Defendant's misleading business practices, Plaintiff and the members of the National Classes have suffered actual monetary damages, including, but not

limited to, increased APR rates in an appoint that will be established at trial.  Plaintiffs and the members of the National Classes will also suffer irreparable harm if Defendant's conduct is not enjoined.

## COUNT VIII

### UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201
### (On behalf of the National Classes)

125.     Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

126.     Pursuant to 28 U.S.C. § 2201, Plaintiffs, on behalf of themselves and on behalf of the National Classes seek a declaratory judgment that the increased credit card interest rates and APRs and Defendant's failure to provide the requisite notice of such increased credit card interest rates and APRs that are challenged in this action, are unlawful under the contracts, laws and regulations implicated by this action.

## COUNT IX

### CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (On behalf of the California Sub-Class)

127.     Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

128.     Defendant, by its actions complained of herein have violated the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA").

129.     Defendant's acts , practices, representations, omissions and courses of conduct with respect to the promotion, marketing, maintenance and servicing of the subject credit cards violate the CLRA in that, among other things:

   a.     Defendant represented that its goods and services had characteristics, ingredients, uses, benefits or quantities which they do not have;

b.   Defendant advertised its goods and services with the intent not to sell them as advertised;

c.   Defendant represented that its goods and services were of a particular standard, quality or grade when they are of another standard, quality or grade; and/or

d.   Defendant inserted unconscionable provisions in its credit card contracts, sought to enforce unconscionable provisions and/or engaged in unconscionable behavior.

130.   Defendant's concealment, omissions and deceptive practices in violation of the CLRA were designed to induce Plaintiff Kolkowski and California Sub-Class members to accept and use its credit cards.   The facts misrepresented, concealed or omitted by Defendant were material, in that a reasonable person would have considered them important in deciding whether to accept and use Defendant's credit cards.

131.   As a direct and proximate result of Defendant's violations, Plaintiff Kolkowski and the California Sub-Class members were injured.

132.   Plaintiff Kolkowski and the California Sub-Class members are therefore entitled to and seek equitable relief as set forth below, and attorneys' fees and costs.

### COUNT X

**UNFAIR COMPETITION LAW**
**(On behalf of the California Sub-Class)**

133.   Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

134.   Defendant's business practices as complained of herein violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and similar unfair competition laws of other States.

135.   Defendant's practices constitute "unlawful" business practices in violation of the UCL because, among other things, they violate the CLRA, TILA and the FAA and have breached explicit and implied contracts.

136.   Defendant's actions and practices constitute "unfair" business practices in violation of the UCL, because, among other things, they are immoral, unethical, oppressive, unconscionable, unscrupulous or substantially injurious to consumers, and/or any utility of such practices is outweighed by the harm caused consumers.

137.   Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they have a capacity and tendency to deceive members of the public.

138.   As a result of Defendant's wrongful business practices, Plaintiff Kolkowski and California Sub-Class members have suffered injury in fact in that they have lost money or property.

139.   Defendant's wrongful business practices present and ongoing and continuing threat to the general public.

140.   Accordingly, Plaintiff Kolkowski is entitled to and prays for judgment and for equitable relief for herself and for California Sub-Class members, and, where appropriate, members of the general public, including rescission, disgorgement, restitution, and for attorneys' fees and costs of suit.

## COUNT XI

### FALSE ADVERTISING ACT
### (On behalf of California Sub-Class)

141.   Plaintiffs repeat and reallege paragraphs 1 through 73 as though set forth herein.

142.    Defendant's acts, conduct and practices, as alleged herein, constitute false advertising in violation of California Business and Professions Code §§ 17500 *et seq.* ("FAA").

143.    Defendant, with the intent to market its credit cards to consumers, made or disseminated or caused to be made or disseminated before the public in California in standardized written and electronic form, including in print media, broadcast media and over the Internet, statements concerning the interest rates and associated characteristics of its credit cards which (1) were untrue or misleading, and which were known, or which by the exercise of reasonable case should have been known to be untrue or misleading, or (2) which were made as part of a plan or scheme with the intent not to provide and maintain its credit cards and associated services as advertised.

144.    As a direct and proximate result of Defendant's false advertising practices as alleged herein, Defendant were able to: (a) purvey more credit card accounts than they otherwise would have and cause more consumers to enter into contracts for credit cards than would otherwise have been the case; and/or (b) charge inflated prices for credit card services, and accordingly received and are in possession of excessive and unjust revenues and profits.

145.    Plaintiff Kolkowski and the California Sub-Class members seek and are entitled to rescission and disgorgement of all profits Defendant obtained from such false advertising.

## COUNT XII

### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (On behalf of the Kansas Sub-Class)

146.    Plaintiffs repeat and reallege paragraphs 1 through 81 as though set forth herein.

147.    Defendant, by its actions complained of herein has violated the Kansas Consumer Protection Act, K.S.A. 50-623 ("KSCPA"), entitling Plaintiff Kautz and members of the Kansas

Sub-Class to damages and relief under the KSCPA.

148.    Plaintiff Kautz and members of the Kansas Sub-Class were "Consumers" within the meaning of the KSCPA and Defendant was a "Supplier" within the meaning of the KSCPA.

149.    Defendant's deceptive marketing scheme concerning its credit card products violates the KSCPA because, *inter alia*, Defendant willfully, with the intent to market its credit cards to consumers, made or disseminated or caused to be made or disseminated before the public in Kansas, in standardized written and electronic form, including in print media, broadcast media and over the Internet, statements concerning the interest rates and associated characteristics of its credit cards which (1) were untrue or misleading, or (2) which were made as part of a plan or scheme with the intent not to provide and maintain its credit cards and associated services as advertised.

150.    On account of Defendants' willful use of falsehood as to a material fact in its advertising, Plaintiff Kautz and the Kansas Sub-Class are entitled to relief.

151.    Plaintiff Kautz, on behalf of herself and the Kansas Sub-Class, seeks a declaratory judgment that Defendants' acts and practices violate the KSCPA and seeks to enjoin Defendants from continuing to violate the KSCPA.

152.    Plaintiff Kautz, on behalf of herself and the Kansas Sub-Class, also seeks damages for the injuries sustained on account of Defendant's violations of the KSCPA.

## COUNT XIII

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (On behalf of the New Jersey Sub-Class)

153.    Plaintiffs repeat and reallege paragraphs 1 through 73 as though set forth herein.

154.    Defendant conducts trade and commerce within the meaning of the New Jersey Consumer Fraud Act ("CFA").

155.    Section 56:8-2 of the CFA states that, in connection with the sale or marketing of a product:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

156.    Defendant's deceptive marketing scheme concerning its credit card products violates the CFA because, *inter alia*, Defendant failed to disclose in its marketing materials that it  maintains the unilateral right to increase interest rates, thereby failing to alert consumers of the actual terms of the card.  Consumers, enticed by representations of "low" and/or "fixed" interest rates applied for cards, received cards with a "low" and/or "fixed" interest rate only to have that interest rate increased by Defendant without reason.

157.    Defendant's unlawful conduct as described herein arose, is directed, and emanates from Defendant's headquarters to the detriment of Plaintiff Mancuso and the New Jersey Sub-Class.

158.    Defendant's concealment, suppression, omissions, misrepresentations, deceptions, and unconscionable and deceptive practices have the tendency, capacity, and likelihood to deceive Plaintiff Mancuso and the New Jersey Sub-Class.

159.    Plaintiff Mancuso and the New Jersey Sub-Class are accordingly harmed by Defendant's conduct in violation of the CFA.

160.     Section 56:8-2.11 of the CFA states that any person violating the provisions of the CFA shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.

161.     Additionally, Section 56:8-2.12 of the CFA states that the refund of monies herein provided for under the CFA may be recovered in a private action or by such persons authorized to initiate actions pursuant to P.L.1975, c. 376 (C. 40:23-6.47 *et. seq*.).

162.     56-8-19 of the CFA allows the recovery by any person who has suffered an ascertainable loss of treble damages, reasonable attorney's fees, and reasonable costs of suit.

<h3 style="text-align:center"><u>PRAYER FOR RELIEF</u></h3>

WHEREFORE, Plaintiffs and the National Classes and State Sub-Classes pray for judgment against Defendant, jointly and severally, as follows:

A.     Certifying the National Classes and the State Sub-Classes pursuant for Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as class representatives and designating their counsel as counsel for the National Classes and the State Sub-Classes;

B.     Awarding Plaintiffs and the National Classes and the State Sub-Classes compensatory damages, in an amount exceeding $5,000,000;

C.     Awarding Plaintiffs and the National Classes and the State Sub-Classes statutory damages, where permitted;

D.     Requiring Defendant to make restitution and/or disgorge into a common fund or constructive trust all monies paid by Plaintiffs and the National Classes and the State Sub-Classes to the full extent to which Defendant were unjustly enriched by

its unlawful and/or inequitable conduct alleged herein;

E.      Declaring that Defendant has engaged in the unlawful and inequitable conduct

        alleged herein;

F.      Granting Plaintiffs and the National Classes and the State Sub-Classes the costs of

        prosecuting this action, together with interest and reasonable attorney's fees; and

G.      Granting other relief as this Court may deem just and proper under the

        circumstances.

DATED this 2nd day of August, 2010.

                        Respectfully submitted,

                        BY:  WEBB, KLASE & LEMOND, LLC

                         s/ *E. Adam Webb*
                        E. Adam Webb
                          Georgia State Bar No. 743910
                        G. Franklin Lemond, Jr.
                          Georgia State Bar No. 141315

                        1900 The Exchange, S.E.
                        Suite 480
                        Atlanta, Georgia 30339
                        (770) 444-0773
                        (770) 444-0271 (fax)
                        Adam@WebbLLC.com
                        FLemond@WebbLLC.com

                        Attorneys for *Barker* Plaintiffs

FINKELSTEIN THOMPSON LLP

  s/ *Tracy D. Rezvani*
Tracy D. Rezvani
Halley F. Ascher
Elizabeth K. Tripodi
1050 30th Street N.W.
Washington, DC 20007
(202) 337-8000
(203) 337-8090 (fax)
TRezvani@finkelsteinthompson.com
HAscher@finkelsteinthompson.com
ETripodi@finkelsteinthompson.com

Attorneys for *Mancuso* Plaintiffs
 LITIGATION LAW GROUP

  s/ *Gordon M. Fauth, Jr.*
Gordon M. Fauth, Jr.
Alexis A. Phocas
1801 Clement Avenue, Suite 101
Alameda, California 94501
(510) 238-9610
(510) 337-1431 (fax)
gmf@classlitigation.com

Attorneys for Plaintiff in *Kolkowski*